

# EXHIBIT   A

*Law Offices of*
**CARSON MESSINGER ELLIOTT**
**LAUGHLIN & RAGAN, P.L.L.C.**
*3300 North Central Avenue, Suite 1900*
*Phoenix, Arizona 85012*
*(602) 264-2261*
Kevin R. Keating (No. 012216)
*kkeating@carsonlawfirm.com*
*Attorneys for the Walkers*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| THE PARSONS CO., INC., | Case No: CVC 2004-01368 |
| Plaintiff, | |
| vs. | **WALKER DEFENDANTS'** |
| | **SECOND AMENDED CROSS-CLAIM** |
| AWD RANCH LLC, an Arizona limited | **AND THIRD-PARTY COMPLAINT** |
| liability company; R. W. WALKER and | |
| EVE F. WALKER, husband and wife; | |
| DESERT PLANTS CONSERVANCY, | |
| L.L.C., an Arizona limited liability company, | |
| Defendants. | |
| | (Assigned to the Hon. Robert Carter Olson) |
| ETC. | |

For their First Amended Cross-Claim and Third-Party Complaint, Defendants/Cross-Claimants/Third-Party Plaintiffs R. W. Walker and Eve F. Walker allege as follows:

## GENERAL ALLEGATIONS

1. Defendants/Cross-Defendants/Cross-Claimants/Third-Party Plaintiffs R. W. WALKER and EVE F. WALKER ("the Walkers"), husband and wife, reside in the State of Colorado.

2. At all times material hereto, the Walkers were married and were acting on behalf of their marital community.

. . .

3.     Defendant AWD RANCH, LLC ("AWD"), is a limited liability company organized under the laws of the State of Arizona and authorized to do and doing business in Pinal County, Arizona.

4.     Defendant DESERT PLANTS CONSERVANCY, LLC ("DPC"), is a limited liability company organized and existing under the laws of the State of Arizona and authorized to do and doing business in Pinal County, Arizona.

5.     Third-Party Defendant MIMI PIERRON ("Pierron") has caused an act or event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

6.     Third-Party Defendant NILES LIPIN ("Lipin") has caused an act or event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

7.     Third-Party Defendants LORRAINE KESSELRING and JOHN DOE KESSELRING, husband and wife, have caused an act or event to occur in Pinal County, Arizona, are thus subject to the jurisdiction of this Court, and were, at all relevant times, acting for and on behalf of their marital community.

8.     Third Party Defendant THE UNITED STATES OF AMERICA has caused an event to occur in Pinal County, Arizona, and is subject to the jurisdiction of this Court.

9.     Those Defendants named as JOHN DOES 1 through 10, JANE DOES 1 through 10, A, B, C CORPORATIONS 1 through 10 and X, Y, Z ENTITIES 1 through 10, are fictitious Defendants whose interest may appear subsequent to the date of this Complaint and prior to the recordation of a Lis Pendens or entry of a judgment. As soon as the true identities of these Defendants are known, the Walkers will move for their joinder.

10.     The real property which is the subject of these judicial foreclosures is located in Pinal County, Arizona.

. . .

. . .

. . .

## COUNT ONE

### (Foreclosure of Deed of Trust No. 2002-051893)

11.    The Walkers reallege each and every allegation set forth in the preceding paragraphs, and incorporate them herein by reference, as though the same were set forth in full herein.

12.    On or about August 21, 2002, DPC, by and through Pierron, both as its managing member and in her individual capacity, executed a Promissory Note, Escrow Number 231-4020039 (LRM) in favor of the Walkers, in the principal sum of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00). A true and correct copy of this Promissory Note is attached hereto as Exhibit A and incorporated herein by reference.[1]

13.    The Promissory Note provided that semi-annual installments of Seven Thousand Eight Hundred Seventeen and 28/100 Dollars ($7,817.28) would be paid on or before the 25th day of both March and September, beginning on March 25, 2003, and continuing until the principal balance has been paid in full. Interest on the unpaid principal balance was to accrue at seven percent (7%) per annum from September 25, 2002 until paid in full.

14.    The Note further provided that the entire principal balance was to be paid on or before September 25, 2009.

15.    The Note further provided that, if any payment was at least fifteen (15) calendar days past due, a late charge in the amount of One Hundred and 00/100 Dollars ($100.00) would become due.

16.    The Note further provided that, if any payment was late, the late fee would be One Hundred Twenty-Seven and 00/100 Dollars ($127.00) per day.

17.    In addition to the late fees set forth above, the Note further provided that if the payment(s) is at least thirty (30) days past due, then the principal balance shall bear interest at the default rate of five percent (5%) per annum above the stated interest rate of seven percent (7%) per annum.

---

[1]This Exhibit A and each of the other Exhibits B through L discussed below are attached to the Walkers' First Amended Cross-Claim and Third-Party Complaint dated August 22, 2008, and those Exhibits are incorporated herein by this reference, but are not attached to this pleading.

3

18. The Note further provided that the default rate shall begin on the 31st day following the due date of the payment(s) until payment(s) is brought current.

19. The Note further provided that the default interest penalty is applicable in the event of a declared default, *i.e.*, foreclosure/forfeiture proceedings initiated by sellers/ beneficiaries.

20. In addition to the foregoing, Lipin executed a Personal Guarantee on September 23, 2002, unconditionally guaranteeing to the Walkers the performance of DPC and Pierron of all obligations set forth in the Promissory Note designated as Escrow Number 231-4020039 (lrm). A true and correct copy of this Personal Guarantee is attached hereto as Exhibit B and incorporated herein by reference.

21. In addition to the foregoing, DPC, as Trustor, executed a Deed of Trust and Assignment of Rents with First American Title Insurance Company as Trustee, and named the Walkers as Beneficiaries. This Deed of Trust and Assignment of Rents secured all obligations referenced in the Promissory Note designated as Escrow Number 231-4020039 (lrm). This Deed of Trust and Assignment of Rents was recorded on September 25, 2002, as Fee Number 2002-051893, in the records of the Pinal County Recorder, Pinal County, Arizona. A true and correct copy of this Deed of Trust and Assignment of Rents is attached hereto as Exhibit C and incorporated herein by this reference.

22. Although the Deed tendered in the above transaction was re-recorded to correct an error in the legal description, Kesselring and JOHN DOE KESSELRING, wife and husband, and the UNITED STATES OF AMERICA may still have a claim as a result of the Deed of Trust described above, recorded as Fee Number 2002-051893, which covers property not conveyed in the corrected Deed recorded in Fee Number 2003-90937.

23. AWD may have a claim to the effect that the original Deed of Trust, recorded in Document Number 2002-051893, covers property not conveyed in the corrected Deed recorded as Fee Number 2003-90937, or AWD may claim rights acquired by the corrective Deed.

. . .

24. Lipin has an Affidavit Claiming Zoning Exemption recorded in Document Number 2003-88140, records of the Pinal County Recorder.

25. Pierron has an Affidavit Claiming Zoning Exemption recorded in Document Number 2003-88141, records of the Pinal County Recorder.

26. DPC, Pierron and Lipin have each failed to timely make the payments required under the Promissory Note.

27. The Deed of Trust, Paragraph One is entitled, "**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**", and provides, in relevant part:

> **1.** To keep said property in good condition and repair; not to remove or demolish any building thereon; . . . to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

28. DPC has violated this provision of the Deed of Trust by, *inter alia*, diverting surface water by digging various channels in the ground and constructing stock ponds on the property, all without the proper authorization and licenses required by applicable law.\

29. The above actions violated the Deed of Trust by: (a) damaging the property, and thus failing to keep it in good condition; (b) failing to comply with applicable Arizona laws governing the property; (c) committing waste, as that term is defined under Arizona law; and (d) permitting the commission of acts on the property in violation of Arizona law.

30. These violations constituted a breach of the Deed of Trust by DPC, Pierron and Lipin, entitling the Walkers to seek available remedies therefore.

31. The Walkers have elected pursuant to Paragraph 11 of the Deed of Trust, to declare the whole sum of principal and interest immediately due and payable.

32. As a result of the foregoing, the Walkers have previously elected to, and hereby confirm their decision to, accelerate all sums due, to implement the default interest penalty of five percent (5%), and declare that the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100

5

Dollars ($192,980.70), together with interest at the default rate of twelve percent (12%) per annum, and all late charges and late fees are now due and owing.

33.     Pursuant to Paragraph Eleven of the above-referenced Deed of Trust, the Walkers elect to foreclose on the Deed of Trust securing this Promissory Note as if it were a realty mortgage.

34.     In the event there is a deficiency judgment, the Walkers hereby give notice that they intend to recover any such judgment to the extent permitted by law.

35.     Pursuant to the terms of the Promissory Note, the Deed of Trust, and the Personal Guarantee, and further pursuant to A.R.S. §§ 12-341 and 12-341.01, the Walkers are entitled to recover their court costs and attorney's fees incurred herein.

**WHEREFORE**, the Walkers hereby request Judgment against DPC, AWD, Lipin and Pierron, Third-Party Defendants LORAINE KESSELRING and JOHN DOE KESSELRING and Third-Party Defendant UNITED STATES OF AMERICA, as follows:

A.     For a Judgment in favor of the Walkers and against DPC, and, in addition, against Pierron and Lipin, for the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with all interest due and owing from thirty (30) days past the date of default at the rate of twelve percent (12%) per annum, plus all late charges and late fees due and owing, from date of default until date of Judgment;

B.     For Judgment foreclosing the interest of the above-named Cross-Defendants and Third-Party Defendants from that certain Deed of Trust and Assignment of Rents, dated September 25, 2002, and recorded in Fee Number 2002-051893 of the Pinal County Recorder's Office, in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00);

C.     For the issuance of a Writ of Special Execution and an Order mandating that the subject property shall be sold at sheriff's sale, pursuant to law, to the highest bidder, and that each junior lien-holder shall have their period of redemption as provided by statute;

D.     For an Order directing the recovery of a deficiency judgment, and the issuance of a Writ of General Execution against DPC, Pierron and Lipin;

E.   For the court costs incurred herein by the Walkers;

F.   For the attorney's fees incurred herein by the Walkers, pursuant to the terms of the Promissory Note, the Personal Guarantee, the Deed of Trust and Assignment of Rents, and A.R.S. §§ 12-341 and 12-341.01;

G.   For interest on the aggregate at the statutory rate of ten percent (10%) per annum until paid; and

H.   For such other and further relief as is just and proper under the circumstances.

## COUNT TWO

### (Foreclosure of Deed of Trust No. 2002-051899)

36.   The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs, and incorporate them herein by reference, as though the same were set forth in full herein.

37.   On or about August 21, 2002, DPC, by and through its managing member, Pierron, as well as by Pierron and Lipin individually, executed a Promissory Note, Escrow No. 231-4019991 (lrm) in favor of the Walkers, in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00). A true and correct copy of this Promissory Note is attached hereto as Exhibit D and incorporated herein by reference.

38.   The Promissory Note provided that semi-annual installments in the amount of Seven Thousand Eight Hundred Seventeen and 28/100 Dollars ($7,817.28) were to be paid on or before the ninth day of each and every March and September, beginning on March 9, 2003, and continuing until the principal balance has been paid in full, together with interest on the unpaid principal balance at the rate of seven percent (7%) per annum from September 9, 2002 until paid in full.

39.   The Note further provided that all remaining principal and interest were due and payable on or before September 9, 2009.

.  .  .

.  .  .

40. The Note further provided that, if any payment was at least fifteen (15) calendar days past due, a late charge in the amount of One Hundred and 00/100 Dollars ($100.00) would become due.

41. The Note further provided that, if any payment was late, the late fee would be One Hundred Twenty-Seven and 00/100 Dollars ($127.00) per day.

42. In addition to the late fees set forth above, the Note further provided that, if payment(s) is at least thirty (30) days past due, then the principal balance shall bear interest at the default rate of five percent (5%) per annum above the stated interest rate of seven (7%) per annum.

43. The Note further provided that the default rate shall begin on the 31st day following the due date of the payment(s) until payment(s) is brought current.

44. The Note further provided that the default interest penalty is applicable in the event of a declared default, *i.e.*, foreclosure/forfeiture proceedings initiated by sellers/ beneficiaries.

45. Lipin signed the Promissory Note in his individual capacity, making him liable for the obligations therein.

46. In addition to the foregoing, Lipin executed a Personal Guarantee on September 23, 2002, unconditionally guaranteeing to the Walkers the performance of DPC and Pierron of all obligations set forth in Promissory Note designated as Escrow Number 231-4019991 (lrm). A true and correct copy of this Guarantee is attached hereto as Exhibit E and incorporated herein by reference.

47. In addition to the foregoing, DPC, as Trustor, executed a Deed of Trust and Assignment of Rents with First American Title Insurance Company as Trustee, and named the Walkers as beneficiaries. This Deed of Trust and Assignment of Rents secured all obligations referenced in the Promissory Note designated as Escrow Number 231-4019991 (lrm). This Deed of Trust and Assignment of Rents was recorded on September 25, 2002 as Fee Number 2002-051899, in the records of the Pinal County Recorder, Pinal County, Arizona. A true and correct copy of this Deed of Trust and Assignment of Rents is attached hereto as Exhibit F and incorporated herein by reference.

48. DPC, Pierron and Lipin have each failed to timely make the payments required under the Promissory Note.

49. The Deed of Trust, Paragraph One, is entitled, **"TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:"**, and provides, in relevant part:

> **1.** To keep said property in good condition and repair; not to remove or demolish any building thereon; . . . to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

50. DPC has violated this provision of the Deed of Trust by, *inter alia,* diverting surface water by digging various channels in the ground and constructing stock ponds on the property, all without the proper authorization and licenses required by applicable law.

51. The above actions violated the Deed of Trust by: (a) damaging the property, and thus failing to keep it in good condition; (b) failing to comply with applicable Arizona laws governing the property; (c) committing waste, as that term is defined under Arizona law; and (d) permitting the commission of acts on the property in violation of applicable law.

52. These violations constituted a breach of the Deed of Trust by DPC, Pierron and Lipin, entitling the Walkers to seek available remedies therefore.

53. The Walkers have elected, pursuant to Paragraph 11 of the Deed of Trust, to declare the whole sum of principal and interest immediately due and payable.

54. As a result of the foregoing, the Walkers have previously elected to, and hereby confirm their decision to, accelerate all sums due, to implement the default interest penalty of five percent (5%), and declare that the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with interest at the default rate of twelve percent (12%) per annum, and all late charges and late fees are now due and owing.

55. Pursuant to Paragraph Eleven of the foregoing Deed of Trust, the Walkers elect to foreclose on the Deed of Trust securing this Promissory Note as if it were a realty mortgage.

9

56. In the event there is a deficiency judgment, the Walkers hereby give notice that they intend to recover any such judgment to the extent permitted by law.

57. Pursuant to the terms of the Promissory Note, the Deed of Trust, and the Personal Guarantee, and further pursuant to A. R. S. §§ 12-341 and 12-341.01, the Walkers are entitled to recover their court costs and attorney's fees incurred herein.

**WHEREFORE**, the Walkers hereby ask for Judgment against DPC, Pierron and Lipin as follows:

A. For a Judgment in favor of the Walkers and against DPC, and, in addition, against Pierron and Lipin, for the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with all interest due and owing from thirty (30) days past the date of default at the rate of twelve percent (12%) per annum, plus all late charges and late fees due and owing, from date of default until date of Judgment;

B. For Judgment foreclosing the interest of the above-named Cross-Defendants and Third-Party Defendants from that certain Deed of Trust and Assignment of Rents dated September 25, 2002, and recorded in Fee No. 2002-051899 of the Pinal County Recorder's Office, in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00);

C. For the issuance of a Writ of Special Execution and an Order mandating that the subject property shall be sold at sheriff's sale, pursuant to law, to the highest bidder, and that each junior lien-holder shall have their period of redemption as provided by statute;

D. For an Order directing the recovery of a deficiency judgment, and the issuance of a Writ of General Execution against DPC, Pierron and Lipin;

E. For the court costs incurred herein by the Walkers;

F. For attorney's fees incurred herein by the Walkers, pursuant to the terms of the Promissory Note, Personal Guarantee, Deed of Trust and Assignment of Rents and A.R.S. §§ 12-341 and 12-341.01;

. . .

Case 2:11-ap-02323-GBN    Doc 160-1    Filed 06/10/16    Entered 06/10/16 23:00:47    Desc Exhibit A    Page 11 of 26

G.    For interest on the aggregate at the statutory rate of ten percent (10%) per annum until paid; and

H.    For such other and further relief as is just and proper under the circumstances.

## COUNT THREE

### (Foreclosure of Deed of Trust No. 2002-051895)

58.    The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs, and incorporate them herein by reference, as though the same were set forth in full herein.

59.    On or about August 21, 2002, AWD, by and through its managing member, Lipin, and Lipin individually, executed a Promissory Note, Escrow No. 231-4019948 (lrm), in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00) in favor of the Walkers. A true and correct copy of this Promissory Note is attached hereto as Exhibit G and incorporated herein by this reference.

60.    The Promissory Note provided that payments be made in semi-annual installments in the amount of Seven Thousand Eight Hundred Seventeen and 28/100 Dollars ($7,817.28) each, which were due on or before the 25th of each day of March and September, beginning on March 25, 2003, and continuing until the principal balance had been paid in full, together with interest on the unpaid principal balance at the rate of seven percent (7%) per annum commencing on September 25, 2002 until paid in full.

61.    The Note also provided that the entire principal balance, together with accrued interest, shall all be due and payable on or before September 25, 2009.

62.    The Note further provided that, if any payment is at least fifteen (15) calendar days past due, a late charge in the amount of One Hundred and 00/100 Dollars ($100.00) will become due.

63.    The Note further provided that, if any payment was late, the late fee would be One Hundred Twenty-Seven and 00/100 Dollars ($127.00) per day.

64.    In addition to the late fees set forth above, the Note further provided that, if payment(s) is at least thirty (30) days past due, then the principal balance shall bear interest at the default rate of

11

1  five percent (5%) per annum above the stated interest rate of seven (7%) per annum.

2  65.   The Note further provided that the default rate shall begin on the 31st day following the

3  due date of the payment(s) until payment(s) is brought current.

4  66.   The Note further provided that the default interest penalty is applicable in the event of

5  a declared default, *i.e.*, foreclosure/forfeiture proceedings initiated by sellers/ beneficiaries.

6  67.   In addition to the foregoing, Pierron executed a Personal Guarantee on September 23,

7  2002, unconditionally guaranteeing to the Walkers the performance of AWD and Lipin of all

8  obligations set forth in Promissory Note designated as Escrow Number 231-4019948 (lrm).  A true

9  and correct copy of this Personal Guarantee is attached hereto as Exhibit H and incorporated herein

10  by reference.

11  68.   In addition to the foregoing, AWD, as Trustor, executed a Deed of Trust and

12  Assignment of Rents with First American Title Insurance Company as Trustee,  and named the

13  Walkers as beneficiaries.  This Deed of Trust and Assignment of Rents secured all obligations

14  referenced in the Promissory Note designated at Escrow Number 231-4019948 (lrm).  This Deed of

15  Trust and Assignment of Rents was recorded on September 25, 2002, as Fee Number 2002-051895,

16  in the records of the Pinal County Recorder, Pinal County, Arizona.  A true and correct copy of this

17  Deed of Trust and Assignment of Rents is attached hereto as Exhibit I and incorporated herein by

18  reference.

19  69.   AWD, Pierron and Lipin have each failed to timely make the payments required under

20  the Promissory Note.

21  70.   The Deed of Trust, Paragraph One, is entitled, "**TO PROTECT THE SECURITY OF**

22  **THIS DEED OF TRUST, TRUSTOR AGREES:**", and provides, in relevant part:

23  **1.** To keep said property in good condition and repair;  not to remove or demolish
    any building thereon; . . . to comply with all laws affecting said property or requiring

24  any alterations or improvements to be made thereon;  not to commit or permit waste
    thereof;  not to commit, suffer, or permit any act upon said property in violation of

25  law;  and do all other acts which from the character or use of said property may be
    reasonably necessary, the specific enumerations herein not excluding the general.

26

71.     AWD has violated this provision of the Deed of Trust by, *inter alia*, diverting surface water by digging various channels in the ground and constructing stock ponds on the property, all without the proper authorization and licenses required by applicable law.

72.     The above actions violated the Deed of Trust by: (a) damaging the property, and thus failing to keep it in good condition; (b) failing to comply with applicable Arizona laws governing the property; (c) committing waste, as that term is defined under Arizona law; and (d) permitting the commission of acts on the property in violation of applicable law.

73.     These violations constituted a breach of the Deed of Trust by AWD, Pierron and Lipin, entitling the Walkers to seek available remedies therefore.

74.     The Walkers have elected pursuant to Paragraph 11 of the Deed of Trust, to declare the whole sum of principal and interest immediately due and payable.

75.     As a result of the foregoing, the Walkers have previously elected to, and hereby confirm their decision to, accelerate all sums due, to implement the default interest penalty of five percent (5%), and declare that the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with interest at the default rate of twelve percent (12%) per annum, and all late charges and late fees are now due and owing.

76.     Pursuant to Paragraph Eleven of the foregoing Deed of Trust, the Walkers elect to foreclose on the Deed of Trust securing this Promissory Note as if it were a realty mortgage.

77.     Further pursuant to Paragraph Eleven of the Deed of Trust and Assignment of Rents, the Walkers ask that they be awarded a Deficiency Judgment for any remaining balance due hereunder to the extent permitted by law.

78.     Pursuant to the terms of the Promissory Note, the Deed of Trust, and the Personal Guarantee, and further pursuant to A. R. S. §§ 12-341 and 12-341.01, the Walkers are entitled to recover their court costs and attorney's fees incurred herein.

.   .   .

.   .   .

**WHEREFORE**, the Walkers hereby ask for Judgment against AWD, Lipin and Pierron as follows:

    A.    For a Judgment in favor of the Walkers and against AWD, and, in addition, against Pierron and Lipin, for the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with all interest due and owing from thirty (30) days past the date of default at the rate of twelve percent (12%) per annum, plus all late charges and late fees due and owing, from date of default until date of Judgment;

    B.    For Judgment foreclosing the interest of the above-named Cross-Defendants and Third-Party Defendants from that certain Deed of Trust and Assignment of Rents dated September 25, 2002, and recorded in Fee No. 2002-051895 in the office of the Pinal County Recorder's Office, in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000);

    C.    For the issuance of a Writ of Special Execution and an Order mandating that the subject property shall be sold at sheriff's sale, pursuant to law, to the highest bidder, and that each junior lien-holder shall have their period of redemption as provided by statute;

    D.    For an Order directing the recovery of any deficiency judgment, and the issuance of a Writ of General Execution against AWD, Pierron and Lipin;

    E.    For the court costs incurred herein by the Walkers;

    F.    For the attorney's fees incurred herein by the Walkers, pursuant to the terms of the Promissory Note, Personal Guarantee, the Deed of Trust and Assignment of Rents, and A.R.S. §§ 12-341 and 12-341.01;

    G.    For statutory interest on the aggregate at the rate of ten percent (10%) per annum until paid; and

    H.    For such other and further relief as is just and proper under the circumstances.

.  .  .

.  .  .

.  .  .

## COUNT FOUR

### (Foreclosure of Deed of Trust No. 2002-051901)

79.     The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs as though the same were set forth in full herein.

80.     On or about August 21, 2002, AWD, by and through its managing member, Lipin, and Lipin individually, executed a Promissory Note, Escrow No. 231-4020062 (lrm), in favor of the Walkers in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00). A true and correct copy of this Promissory Note is attached hereto as Exhibit J and incorporated herein by this reference.

81.     The Promissory Note provided that payments shall be made in semi-annual installments in the amount of Seven Thousand Eight Hundred Seventeen and 28/100 Dollars ($7,817.28) each on or before the 25th day of each March and September, beginning on March 25, 2003, and continuing until the principal balance has been paid in full, together with interest on the unpaid principal balance at the rate of seven percent (7%) per annum from September 25, 2002 until paid in full.

82.     The Note further provided that, if not sooner paid, the entire unpaid principal balance, together with all accrued and accruing interest, shall be due and payable on or before September 25, 2009.

83.     The Note further provided that, if any payment is at least fifteen (15) calendar days past due, a late charge in the amount of One Hundred and 00/100 Dollars ($100.00) would become due.

84.     The Note further provided that, if any payment was late, the late fee would be One Hundred Twenty-Seven and 00/100 Dollars ($127.00) per day.

85.     In addition to the late fees set forth above, the Note further provided that, if payment(s) is at least thirty (30) days past due, then the principal balance shall bear interest at the default rate of five percent (5%) per annum above the stated interest rate of seven (7%) per annum.

86.     The Note further provided that the default rate shall begin on the 31st day following the

1    due date of the payment(s) until payment(s) is brought current.

2       87.    The Note further provided that the default interest penalty is applicable in the event of

3    a declared default, *i.e.*, foreclosure/forfeiture proceedings initiated by sellers/ beneficiaries.

4       88.    In addition to the foregoing, Pierron executed a Personal Guarantee on September 23,

5    2002, unconditionally guaranteeing to the Walkers the performance of AWD and Lipin of all

6    obligations set forth in Promissory Note designated as Escrow Number 231-4020062 (lrm). A true

7    and correct copy of this Personal Guarantee is attached hereto as Exhibit K and incorporated herein

8    by reference.

9       89.    In addition to the foregoing, AWD, as Trustor, executed a Deed of Trust and

10    Assignment of Rents with First American Title Insurance Company as Trustee, and named the

11    Walkers as beneficiaries. This Deed of Trust and Assignment of Rents secured all obligations

12    referenced in the Promissory Note designated as Escrow Number 231-4020062 (lrm). This Deed of

13    Trust and Assignment of Rents was recorded on September 25, 2002 as Fee Number 2002-05190, in

14    the records of the Pinal County Recorder, Pinal County, Arizona. A true and correct copy of this Deed

15    of Trust and Assignment of Rents is attached hereto as Exhibit L and incorporated herein by reference.

16       90.    AWD, Pierron and Lipin have each failed to timely make the payments required under

17    the Promissory Note.

18       91.    The Deed of Trust, Paragraph One, is entitled, "**TO PROTECT THE SECURITY OF**

19    **THIS DEED OF TRUST, TRUSTOR AGREES:**", and provides, in relevant part:

20

21      **1.** To keep said property in good condition and repair; not to remove or demolish any
building thereon; . . . to comply with all laws affecting said property or requiring any
alterations or improvements to be made thereon; not to commit or permit waste thereof;

22      not to commit, suffer, or permit any act upon said property in violation of law; and do
all other acts which from the character or use of said property may be reasonably

23      necessary, the specific enumerations herein not excluding the general.

24       92.    AWD has violated this provision of the Deed of Trust by, *inter alia*, diverting surface

25    water by digging various channels in the ground and constructing stock ponds on the property, all

26    without the proper authorization and licenses required by applicable law.

93. The above actions violated the Deed of Trust by: (a) damaging the property, and thus failing to keep it in good condition; (b) failing to comply with applicable Arizona laws governing the property; (c) committing waste, as that term is defined under Arizona law; and (d) permitting the commission of acts on the property in violation of applicable law.

94. These violations constituted a breach of the Deed of Trust by AWD, Pierron and Lipin, entitling the Walkers to seek available remedies therefore.

95. The Walkers have elected pursuant to Paragraph 11 of the Deed of Trust, to declare the whole sum of principal and interest immediately due and payable.

96. As a result of the foregoing, the Walkers have previously elected to, and hereby confirm their decision to, accelerate all sums due, to implement the default interest penalty of five percent (5%), and declare that the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with interest at the default rate of twelve percent (12%) per annum, and all late charges and late fees are now due and owing.

97. Pursuant to Paragraph Eleven of the foregoing Deed of Trust, the Walkers elect to foreclose on the Deed of Trust securing this Promissory Note as if it were a realty mortgage.

98. Further, pursuant to Paragraph Eleven of the Deed of Trust, the Walkers elect to recover a deficiency judgment for any remaining balance due hereunder to the extent permitted by law.

99. Pursuant to the terms of the Promissory Note, the Deed of Trust, and the Personal Guarantee, and further pursuant to A. R. S. §§ 12-341 and 12-341.01, the Walkers are entitled to recover their court costs and attorney's fees incurred herein.

100. The effect of this foreclosure will be to foreclose all rights asserted by Lipin in that certain Affidavit Claiming Zoning Exemption which was recorded in Docket Number 2003-88140 in the Pinal County Recorder's Office, Pinal County, Arizona.

101. A further effect of this foreclosure shall be to foreclose all rights asserted by that certain instrument recorded by Pierron entitled Affidavit Claiming Zoning Exemption, recorded in Docket Number 2003-88141 in the Pinal County Recorder's Office, Pinal County, Arizona.

102. In addition to the foregoing, foreclosure of this Deed of Trust may affect DPC, pursuant to the rights asserted in that certain Deed of Trust and Assignment of Rents, in the original principal amount of One Hundred Ninety-Five Thousand and 00/100 Dollars ($195,000.00), dated August 21, 2002, and recorded on September 25, 2002, in Docket Number 2002-051893.

**WHEREFORE,** the Walkers ask for Judgment against AWD, DPC, Lipin and Pierron as follows:

A. For a Judgment in favor of the Walkers and against AWD, and, in addition, against Pierron and Lipin, for the sum of One Hundred Ninety-Two Thousand Nine Hundred Eighty and 70/100 Dollars ($192,980.70), together with all interest due and owing from thirty (30) days past the date of default at the rate of twelve percent (12%) per annum, plus all late charges and late fees due and owing, from date of default until date of Judgment;

B. For Judgment foreclosing the interest of the above-named Cross-Defendants and Third-Party Defendants from that certain Deed of Trust and Assignment of Rents dated September 25, 2002, and recorded in Fee No. 2002-051901, in the records of the Pinal County Recorder, in the original principal amount of One Hundred Thousand Ninety-Five Thousand and 00/100 Dollars ($195,000.00);

C. For the issuance of a Writ of Special Execution and an Order mandating that the subject property shall be sold at sheriff's sale, pursuant to law, to the highest bidder, and that each junior lien-holder shall have their period of redemption as provided by statute;

D. For an Order directing the recovery of any deficiency judgment, and the issuance of a Writ of General Execution against AWD, Pierron and Lipin;

E. For the court costs incurred herein by the Walkers;

F. For the attorney's fees incurred herein by the Walkers, pursuant to the terms of the Promissory Note, the Personal Guarantee, the Deed of Trust and Assignment of Rents, and A.R.S. §§ 12-341 and 12-341.01;

. . .

. . .

1    G.    For interest on the aggregate at the statutory rate of ten percent (10%) per annum until

2    paid; and

3    H.    For such other and further relief as is just and proper under the circumstances.

5    **COUNT FIVE**

6    **(Fraud)**

7    103.   The Walkers hereby reallege each and every allegation set forth in the preceding

8    paragraphs as though the same were set forth in full herein.

9    104.   Count Five herein is being asserted against each of the Cross-Defendants and Third-

10   Party Defendants identified in Paragraphs 3 though 7 above (hereinafter the "AWD Parties.")

11   105.   During the negotiations in 2002 between the Walkers and the AWD Parties that led to

12   the sales and loan transactions that are the subject of Counts One through Four above, The AWD

13   Parties represented to the Walkers that said parties had sufficient income, assets and credit that would

14   be sufficient for them to meet their obligations under the various instruments and loan agreements that

15   said parties signed that are alleged in the above paragraphs of this pleading and are attached as exhibits

16   to the Walkers previous pleadings in this matter (hereinafter, the "Sales and Loan Documents").

17   106.   Said representations were false and misleading, and were intentionally false and

18   misleading, and were made by the AWD Parties to the Walkers to fraudulently induce the Walkers to

19   agree to sell the properties to the AWD Parties and to issue the loans to the AWD Parties as reflected

20   in the Sales and Loan Documents.

21   107.   Upon information and belief, at a point in time that is unknown to the Walkers, the

22   AWD Parties concocted a plan to defraud the Walkers by improperly and illegally misrepresenting

23   themselves as having the requisite income, assets and credit that would be sufficient for them to meet

24   their obligations under the Sales and Loan Documents.

25   108.   Among other fraudulent statements and purposeful misrepresentations, the AWD Parties

26   prepared and presented to the Walkers certain financial statements that falsely represented that the

1    AWD Parties and certain of them had more income and assets than was actually true and correct.

2        109.    As part of the fraudulent plan and scheme, the AWD Parties also secretly, that is without

3    any notice to or discussion with the Walkers, and in direct violation of the terms of the Sales and Loan

4    Documents then being negotiated and signed in and around 2002, created an entity, AWD Farms, for

5    the benefit of which entity the AWD Parties purported to illegally and improperly subordinate and

6    encumber their assets and income as well as the properties in question in this lawsuit.

7        110.    Upon information and belief, that entity AWD Farms may not even have been created

8    until very recently when the AWD Parties sought to carry on their fraudulent plan and scheme even

9    further by falsely creating it in the AWD Parties' efforts to evade their responsibilities and debts and

10   to improperly hide income and assets from the Walkers and others including the Internal Revenue

11   Service and to make false and misleading claims in this lawsuit about their alleged damages.

12       111.    The Walkers believe and therefore allege that the AWD Parties pursued the above-

13   described plan and scheme in order to defraud the Walkers so that the AWD Parties would acquire the

14   above-described properties to use and make profits for their own accounts and, in the process, deprive

15   the Walkers of whatever profits and future sales proceeds that the Walkers would have been able to

16   achieve if they retained the properties in question and/or sold the properties to properly and sufficiently

17   financed persons or entities.  In addition, the plan and scheme aided the AWD Parties in submitting

18   false and misleading damage claims in this lawsuit.

19       112.    The Walkers believe and therefore allege that the AWD Parties pursued the above-

20   described plan and scheme with full knowledge that said plan and scheme would result in the Walkers

21   being deprived of their rightful assets and potential profits and sales proceeds to be derived therefrom

22   and that carrying on the plan and scheme would cause the Walkers to expend large amounts of money

23   in seeking to recover possession of the properties in question and to defend themselves against

24   improper claims made against the Walkers by the AWD Parties.

25       113.    The Walkers believe and therefore allege that the AWD Parties, in concocting and

26   pursuing the above-described plan and scheme, knew that their actions in preparing and submitting

such financial statements and records to the Walkers were false, wrong and fraudulent, or that they performed such actions with a reckless disregard for the truth or falsity thereof, and the AWD Parties concealed or failed to disclose material facts in the documents that comprised the financial records and the oral statements made to the Walkers about the AWD Parties financial condition.

114.    The representations by the AWD Parties as described above were false, were intended by the AWD Parties to be false and misleading, were material to said sales and loan transactions, and were made by the AWD Parties with the intent that others, including the Walkers, would rely on them. The Walkers did rely on them and had a right to rely on them, all to the Walkers' detriment and damage.

115.    The Walkers believe and therefore allege that the AWD Parties knew when they made the false and fraudulent representations as alleged above that the Walkers and others would rely on them and that the Walkers and others would be injured if the AWD Parties actually went ahead and purchased the properties in question and if the Walkers went ahead and made the loans to the AWD Parties that are reflected in the Sales and Loan Documents.

116.    As noted above in this pleading, the Walkers have suffered and/or will suffer significant damages from the AWD Parties' fraud in that the Walkers' followed through and sold the properties to the AWD Parties and signed the loan documents shown in the Sales and Loan Documents and thereafter the AWD Parties defaulted on those loans and the Walkers have been required to resort to seeking redress in this Court for the wrongs perpetrated by the AWD Parties.

117.    The acts of the AWD Parties were part of an evil plan and scheme which was of such a grave, intentional and malicious nature amounting to gross misconduct and a total disregard for the rights of the Walkers and others, that an award of punitive damages to the Walkers is fully warranted and justified. The amount of the punitive damages should be an amount appropriate to punish the AWD Parties and to deter them and others from engaging in similar conduct in the future.

**WHEREFORE,** the Walkers ask for Judgment against the AWD Parties as follows:

A.    For a Judgment in favor of the Walkers and against the AWD Parties for a sum to fully

compensate the Walkers, not only for the amount of the defaulted loans, the missed payments, the lost interest and fees, but also for all damages that the Walkers have suffered because of the fact that the Walkers have not been able to reap profits and/or sales proceeds from the properties in question since 2002 and because of the fact that the Walkers have expended great amounts of money in expenses and legal fees in seeking redress against the AWD Parties and in the Walkers defending themselves against the spurious claims filed by the AWD Parties in this lawsuit;

      B.     For Judgment in favor of the Walkers and against the AWD Parties, on the Walkers' claims for punitive damages, in a sum sufficient to adequately punish the AWD Parties and sufficient to deter them and others from engaging in similar conduct in the future.

      C.     For the court costs incurred herein by the Walkers;

      D.     For the attorney's fees incurred herein by the Walkers, under any and all applicable statutes and common law principles;

      E.     For interest on the amount of any Judgment rendered under this Count at the statutory rate until paid; and

      F.     For such other and further relief as is just and proper under the circumstances.

## COUNT SIX

### (Negligent Misrepresentation)

118.    The Walkers hereby reallege each and every allegation set forth in the preceding paragraphs as though the same were set forth in full herein.

119.    Count Six herein is being asserted against each of the Cross-Defendants and Third-Party Defendants identified in Paragraphs 3 though 7 above (hereinafter the "AWD Parties.")

120.    The AWD Parties made certain misrepresentations in connection with their negotiations with the Walkers regarding the purchase by the AWD Parties of the properties in question and the loans made by the Walkers to the AWD Parties as more fully described above in this pleading.

121.    At some point between 2002 and 2008, the AWD Parties also created an entity AWD

Farms as discussed above as part of the false and fraudulent plan and scheme

122.   The Walkers believe and therefore allege that the AWD Parties' representations made in connection with above-described negotiations and transactions were false, the AWD Parties knew that they were false or made said representations with a reckless disregard for the truth or falsity thereof, and the AWD Parties concealed or failed to disclose material facts in the documents prepared and submitted to the Walkers in connection with the above-discussed negotiations and transactions.

123.   The above-stated acts of the AWD Parties, at the very least, constitute negligent misrepresentation.

124.   As noted above in this pleading, the Walkers have suffered and/or will suffer significant damages from the AWD Parties' fraudulent and/or negligent misrepresentation in that the Walkers' followed through and sold the properties to the AWD Parties and signed the loan documents shown in the Sales and Loan Documents and thereafter the AWD Parties defaulted on those loans and the Walkers have been required to resort to seeking redress in this Court for the wrongs perpetrated by the AWD Parties.

125.   The acts of the AWD Parties were part of an evil plan and scheme which was of such a grave, intentional and malicious nature amounting to gross misconduct and a total disregard for the rights of the Walkers and others, that an award of punitive damages to the Walkers is fully warranted and justified.  The amount of the punitive damages should be an amount appropriate to punish the AWD Parties and to deter them and others from engaging in similar conduct in the future.

**WHEREFORE,** the Walkers ask for Judgment against the AWD Parties as follows:

A.   For a Judgment in favor of the Walkers and against the AWD Parties for a sum to fully compensate the Walkers, not only for the amount of the defaulted loans, the missed payments, the lost interest and fees, but also for all damages that the Walkers have suffered because of the fact that the Walkers have not been able to reap profits and/or sales proceeds from the properties in question since 2002 and because of the fact that the Walkers have expended great amounts of money in expenses and legal fees in seeking redress against the AWD Parties and in the Walkers defending themselves against

1 | the spurious claims filed by the AWD Parties in this lawsuit.

2 |      B.    For Judgment in favor of the Walkers and against the AWD Parties, on the Walkers'

3 | claims for punitive damages, in a sum sufficient to adequately punish the AWD Parties and to

4 | sufficient to deter them and others from engaging in similar conduct in the future.

5 |      C.    For the court costs incurred herein by the Walkers;

6 |      D.    For the attorney's fees incurred herein by the Walkers, under any and all applicable

7 | statutes and common law principles;

8 |      E.    For interest on the amount of any Judgment rendered under this Count at the statutory

9 | rate until paid; and

10 |      F.    For such other and further relief as is just and proper under the circumstances.

11 |

12 |      DATED this ___*31st*___ day of October, 2008.

13 |

14 |                  **CARSON MESSINGER ELLIOTT**
                 **LAUGHLIN & RAGAN, P.L.L.C.**

15 |

16 |

17 |               By _____
                   Kevin R. Keating

18 |                    3300 N. Central Avenue, Suite 1900
                   Phoenix, Arizona 85012

19 |                    Tel. No. (602) 264-2261
                   kkeating@carsonlawfirm.com

20 |                    Attorneys for the Walker Defendants

21 |

22 | COPY of the Foregoing mailed
and Faxed this ___*31st*___ day

23 | of October, 2008, to:

24 | Hon. Robert Carter Olson
Judge of the Superior Court

25 | P. O. Box 946
Florence, Arizona 85232

26 | Fax No. (520) 866-5414

| | |
|---|---|
| 1 | COPY of the Foregoing mailed and e-mailed this ___*31st*___ day |
| 2 | of October, 2008, to: |
| 3 | Melvin C. Cohen, Esq. |
| | Patrick J. Lopez, Esq. |
| 4 | Mesch, Clark & Rothschild, P.C. |
| | 259 North Meyer Avenue |
| 5 | Tucson, Arizona 85701 |
| | mcohen@mcraz.com |
| 6 | Counsel for Plaintiff |
| 7 | Kevin M. Bumstead, Esq. |
| | 5333 North 7th St., Suite B-215 |
| 8 | Phoenix, Arizona 85014 |
| | kb@tahanlaw.com |
| 9 | Counsel for the AWD Parties |
| 10 | Michael S. Woodlock, Esq. |
| | Gust Rosenfeld, P.L.C. |
| 11 | 1 South Church Street |
| | Suite 1900 |
| 12 | Tucson, Arizona 85701 |
| | woodlock@gustlaw.com |
| 13 | Counsel for the AWD Parties |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |